**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KIMBERLY TATE FOUNTAIN, etc.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 26-0263-WS-N** |
| | ) | |
| **BOBBI MACE-MALDONADO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# ORDER

This removed action was recently transferred to the undersigned. Subject matter jurisdiction is said to rest on diversity of citizenship. (Doc. 1). After conducting its routine *sua sponte* review of its subject matter jurisdiction, the Court was unable to confirm that such jurisdiction exists. The Court extended the parties an opportunity to address the Court's concerns, (Docs. 12, 16), and they have done so. (Docs. 18, 20). After careful consideration of all relevant materials, the Court is satisfied that it has subject matter jurisdiction over this action.

As previously noted, the Court is satisfied that the amount in controversy exceeds the jurisdictional threshold. (Doc. 12 at 1). The Court is also satisfied that the plaintiff is a citizen of Alabama and that the two individual defendants are citizens of Florida and Maryland, respectively. (*Id.*; Doc. 16 at 1). The individual defendants are members of a certain limited liability company ("the Company"); the plaintiff is the personal representative of the estate ("the Estate") of the third member of the Company. (Doc. 1-1 at 1-2).

The original complaint, which was the operative pleading at the time of removal, named only these three individuals as parties. (Doc. 1-1 at 2). The removing defendants, however, represented in their notice of removal that the Company is a necessary and indispensable party. (Doc. 1 at 2). Moreover, as a matter of course and prior to transfer

to the undersigned, the plaintiff filed an amended complaint naming the Company as a third defendant. (Doc. 8). The citizenship of the Company is therefore critical to the existence of diversity jurisdiction under Section 1332, Section 1447(e), or both.

The citizenship of the legal representative of the estate of a decedent is deemed to be that of the decedent. 28 U.S.C. § 1332(c)(2). The citizenship of a limited liability company is deemed to be that of each of its members. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). The parties agree that, if the Estate is a member of the Company, complete diversity is lacking. (Doc. 18 at 2-3; Doc. 20 at 1). Citing Florida law and the terms of the Company's operating agreement ("the Agreement"),[1] the parties unsurprisingly reach different conclusions as to the Estate's status.

Florida has enacted an elaborate statutory scheme addressing limited liability companies ("LLC's"). It defines "person" as including an estate. Fla. Stat. § 605.0102(48). It then defines a "member" as a person that "[i]s a member of a limited liability company under § 605.0401 or was a member in a company when the company became subject to the chapter [and] [h]as not dissociated from the company under § 605.0602." *Id*. § 605.0102(40).[2]

Section 605.0401(1) and (2) identify how a person becomes a member of an LLC at the time of its formation. The Estate plainly did not become a member of the Company upon its formation.

Section 605.0401(3)(a)-(d) provides that, "[a]fter formation of a limited liability company, a person becomes a member" in one of four ways. The first is "[a]s the result

[1] The complaint attaches an amended operating agreement, effective as of April 1, 2022. (Doc. 1-1 at 14). The defendants rely on the same document. (Doc. 18-1 at 2). The plaintiff attaches to her brief a "second" amended operating agreement. (Doc. 20-1). Because this document is undated and unsigned, (*id*. at 2, 22, 24), because the plaintiff represents that its relevant provisions are "materially similar" to those of its predecessor, (Doc. 20 at 2 n.1), and because both parties have relied in their briefing on the predecessor, the Court relies on the first amended operating agreement.

[2] The parties agree that the Estate's decedent dissociated from the Company at his death. (Doc. 18 at 6, 8, 9; Doc. 20 at 3, 9).

of a merger, interest exchange, conversion, or domestication." The second is "[w]ith the consent of all members." The third is "[a]s provided in § 605.0701(3)," which contemplates admission of a member to an otherwise memberless LLC by the consent of non-member "transferees owning the rights to receive a majority of distributions." The Estate plainly did not become a member of the Company in any of these ways.

The fourth and final way a person can become a member of an LLC is "[a]s provided in the operating agreement." Fla. Stat. § 605.0401(3)(a). The Court therefore turns its attention to the Agreement.

> The economic interests in the Company shall be represented by membership interest units (the "Units"). Each Member's interest in the Company, including such Member's interest in income, gains, losses, deductions and expenses of the Company and the right to vote on certain matters as provided in this Agreement, shall be represented by the Units owned by such member.

(Doc. 18-1 at 2, § 5(a)).

> In the event that a Member dies ..., all of the Units of such deceased ... Member shall automatically transfer to the estate, successors or heirs, as applicable, of such deceased ... Member (collectively, the "Heirs"); provided that the Heirs shall be treated as Assignees of such Units and shall have the rights and obligations of an Assignee as described in Section 20.

(*Id*. at 7, § 12(a)).

Relying exclusively on Sections 5(a) and 12(a), the plaintiff asserts that the Agreement "makes [the decedent's heirs] members of the Company upon his death." She argues that "Units represent membership" and "carry membership rights by definition." Therefore, she says, transfer of the decedent's Units to the heirs -- which Section 12(a) accomplishes automatically -- transferred membership to the Estate. (Doc. 20 at 5-6).[3] The Court cannot agree.

By its terms, Section 12(a) makes clear that the heirs of a deceased member do not, on that account, become "members"; instead, they become "assignees" and have only

[3] The defendants agree that "Heirs" within Section 12(a) "can include the Member's Estate." (Doc. 18 at 7).

the rights and obligations of an assignee "as described in Section 20." That provision reads in full as follows:

> For the purposes of this Agreement, "Assignee" shall mean a Person that has acquired all or any portion of any Unit (including by means of a Transfer permitted under Section17). All rights and privileges associated with an Assignee's interest in the Company shall be derived solely from the Member's interest of which such rights and privileges were previously a component part, and no Assignee shall hold, by virtue of such Assignee's interest in the Company, any rights and privileges that were not specifically transferred to such Assignee by the prior holder of such interest. An Assignee that holds an interest in the Company shall be entitled to receive the allocations attributable to such interest pursuant to Section 15, to receive the distributions attributable to such interest pursuant to Sections 16 and 29, and to Transfer such interest in accordance with the terms of Section 17. Notwithstanding the preceding sentence, the Company, the Board and the Members shall incur no liability for allocations and distributions made in good faith to a transferor until a valid written instrument of Transfer has been received by the Company and recorded on its books and the effective time of the Transfer has passed. For purposes of clarity, any interests held by an Assignee hereunder shall be non-voting interests.

(Doc. 18-1 at 15, § 20). An assignee's rights thus extend only to receiving allocations and distributions and to transferring to a third party the interest it received.[4]

The plaintiff considers voting to be a hallmark of membership, and she notes that Section 5(a) confirms that a member's "right to vote ... shall be represented by the Units owned by such Member." By recognizing an automatic transfer of a deceased member's Units to his heirs, she says, Section 12(a) transfers to the heirs the right to vote, which right confirms that the Estate is a member. (Doc. 20 at 5). Her argument is negated by Section 20, which specifies that any interest held by an assignee (which is how Section 12(a) requires the heirs to be treated) "shall be non-voting interests."

Other portions of the Agreement confirm that the Estate is not a member. As noted, Section 12(a) provides for heirs' acquisition of Units by "transfer," and it identifies such heirs as the specific form of transferee known as an assignee. Section 17 addresses transfers of a member's interest in the Company, with assignment identified as one means

---

[4] The plaintiff conceded as much in her amended complaint. (Doc. 8 at 8, ¶ 42).

of transfer. (Doc. 18-1 at 12, § 17). Section 17 concludes as follows: "In no event shall any transferee of any interest in the Company be considered a Member unless such transferee is admitted as a Member in accordance with the provisions of this Agreement." (*Id*. at 13). Section 17 thus requires formal admission as a member and precludes automatic membership by transfer, including transfer upon death of a member.

Section 13(a) identifies the formal admission procedure to become a member: "admitting new Members to the Company" requires "the vote of the Members holding at least 66 and 2/3% of the Class A Units." (Doc. 18-1 at 8, § 13(a)). Neither the Estate nor the heirs have been voted in as members of the Company. Without such action, the Agreement precludes their being members.

The plaintiff, who fails to acknowledge Sections 13(a), 17, and 20, would rather focus on Florida's statutory scheme, in which she attempts to tease out suggestions that the heirs of deceased members become members themselves.

"If a member who is an individual dies ..., the member's legal representative may exercise all of the member's rights for the purpose of settling the member's estate ..., including any power the member had to give a transferee the right to become a member." Fla. Stat. § 605.0504. The plaintiff argues that, pursuant to this provision, she "steps into the shoes of the member and exercises the member's rights." (Doc. 20 at 6). Assuming this is a correct reading of the statute, stepping into a deceased member's shoes, and exercising a deceased member's rights, is not the same thing as becoming a member oneself. As noted, Florida law elsewhere establishes the universe of when and how an estate (or any other person or entity) can become a member.

> A person is dissociated as a member if any of the following occur:
> ...
> (10) In the case of a person that is an estate or is acting as a member by virtue of being a legal representative of an estate, the estate's entire transferable interest in the company is distributed.

Fla. Stat. § 605.602(10). The plaintiff believes this provision confirms that the Estate "is a member of the [C]ompany until [the] Estate is fully paid for [the decedent's] shares," because "it presupposes ... that an estate acts as a member of an LLC in the first place."

(Doc. 20 at 7). Section 605.602(10) certainly contemplates that an estate *can* become a member (otherwise, it would not address dissociation of such a member), but it says nothing about whether any particular estate *is* a member, for the obvious reason that Sections 605.0102(40) and 605.0401 establish the test for whether an estate is a member in a given instance.

Finally, the plaintiff argues that there is sufficient uncertainty regarding whether the Estate is a member of the Company that the Court should resolve it by ordering remand. (Doc. 20 at 9). As should be clear from the foregoing discussion, the Court detects no uncertainty: under governing Florida law, the Agreement determines whether the Estate is a member, and under the Agreement, it is not.

For the reasons set forth above, the Court concludes that the Estate is not a member of the Company and that complete diversity therefore exists. Because the amount in controversy exceeds the jurisdictional floor, the Court has subject matter jurisdiction over this action. Should the plaintiff believe otherwise, she is **ordered** to file and serve, on or before **October 6, 2026**, a fully briefed motion to remand.

DONE and ORDERED this 22nd day of September, 2026.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE